STATE of Missouri, Respondent,

v.

Thomas Arthur ALEWINE, Appellant.

No. 56094.

Supreme Court of Missouri, Division No. 1.

Dec. 13, 1971.

Motion for Transfer to Court En Banc or for Rehearing Denied Jan. 10, 1972.

Motion to Quash Mandate Denied Jan. 10, 1972.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

Arch M. Skelton, Theodore L. Johnson, III, Springfield, for appellant.

BARDGETT, Judge.

Thomas Arthur Alewine was found guilty by a jury of burglary in the second degree and stealing. Sections 560.070 and 560.110,

RSMo 1969, V.A.M.S. The jury stated their inability to assess punishment and the court sentenced defendant to two years on the burglary and two years on the stealing to run concurrently. Defendant appeals.

Defendant does not question the sufficiency of the evidence to sustain the conviction.

Defendant's point I involves the failure of the magistrate court to appoint a lawyer for defendant at the preliminary hearing; points II and III concern the actions of the court in overruling defendant's motion to suppress testimony of certain deputy sheriffs as to an alleged oral confession of defendant on the grounds that defendant did not waive the rights of which he had been advised; and point IV concerns the court's instruction as to the oral confession.

On Sunday, November 16, 1969, Mr. and Mrs. Harold Pyle discovered two containers with money belonging to their two sons were missing from their home. The containers held $155 in bills and six silver dollars. Defendant was arrested December 3, 1969, at 12:45 p. m. and taken to the Greene County sheriff's office where he was questioned by four deputy sheriffs and, according to the officers, defendant gave an oral statement admitting that he went into the Pyle home through an unlocked door, found about $155 in a bedroom and stole it.

The court held an evidentiary hearing on defendant's motion to suppress the testimony of the deputy sheriffs as to the oral confession and ruled that the statements given to the officers were given voluntarily after defendant was fully advised of his rights under the Miranda case; that defendant of his own free will waived all such rights and agreed to give an oral statement without any attorney being present; that the statement was not procured by coercion, threats, fear, or promise of leniency; that defendant did not request counsel, and overruled the motion to suppress. The court further stated that it would, if defendant so requested, instruct

the jury in writing as to the voluntariness of the confession and as to the duties of informing defendant of his rights, and the waiver of rights including waiver of right of counsel at the interrogation. Other evidentiary matters will be set forth under the appropriate point infra.

Defendant's first point is that the court erred in overruling his motion to dismiss the information because he was not afforded counsel at the preliminary hearing in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. In support of his position defendant places principal reliance on Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387, decided June 22, 1970, and also cites United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, which also pertain to the right to counsel.

The preliminary hearing in this case took place on December 17, 1969, prior to Coleman v. Alabama, supra. We have held that Coleman v. Alabama will not be applied retroactively in Missouri in the absence of a showing of prejudice. State v. Chapman, Mo., 465 S.W.2d 472, State v. Lahmann, Mo., 460 S.W.2d 559, State v. Caffey, Mo., 457 S.W.2d 657, and State v. Ussery, Mo., 452 S.W.2d 146.

 S.Ct.Rule 23.03, V.A.M.R., pertaining to right to counsel at preliminary hearing is now in effect. It was not in effect at the time this hearing was held. Defendant urges that we should reconsider prior holdings to the contrary and now hold that the preliminary hearing in Missouri is a "critical stage" of the proceedings and apply Coleman v. Alabama retroactively. We adhere to our previous holdings. The point is overruled.

We will consider points II and III together. Point II charges error in overruling defendant's pretrial motion to suppress the testimony of the deputy sheriffs as to the oral confession, and point III alleges error during the trial in the court's

action in overruling defendant's objection to the trial testimony of the deputies concerning the confession. In both points defendant claims his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution were violated.

The issue hinges on the question of whether the trial court erred in ruling that defendant did, prior to the giving of the oral confession, waive his right to remain silent and his right to an attorney.

■ Defendant cites Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70, in support of his position and particularly the statement appearing in Miranda, 86 S.Ct. loc. cit. 1628, taken from Carnley v. Cochran, supra, that, presuming waiver from a silent record is impermissible, the record must show that accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver. This court has so held. State v. McGee, Mo., 447 S.W.2d 270, 275.

However, with respect to waiver, an express statement that the individual does not want a lawyer or that he waives his right to remain silent is not required. What the prosecution must show is that the defendant was effectively advised of his rights and he then intelligently and understandingly declined to exercise them. State v. Hughes, Mo., 460 S.W.2d 600, 603.

Here, there is no question about whether defendant was advised of his rights. Admittedly, they were read to him, he read them, and he signed the document acknowledging receipt of the advice. Additionally, and significantly, there is no question about whether defendant, after being advised of his rights, understood the nature of the advice. On the motion to suppress defendant testified on direct examination, in part:

"Q. Did you understand what the people in the Sheriff's Department told you, that you had a right to remain silent and that you didn't have to talk to them?

A. Yes.

Q. You understood that from reading this document and from what they told you?

A. Yes.

Q. And did you also understand from what they told you that you had the right to have the advice of an attorney and that you had a right to talk to an attorney and to have counsel?

A. Yes."

It would seem apparent that if, after receiving the appropriate warnings and and admittedly understanding their full import, the defendant confessed, that this would constitute a waiver of the right to remain silent and the right to have an attorney present. Miranda v. Arizona, supra, 86 S.Ct. loc. cit. 1628 [52–54], State v. Hughes, supra, loc. cit. 603.

The crux of the controversy at hand arises from defendant's testimony next following that set forth supra.

"Q. Now, after signing this document, I'll ask you, did you tell the Sheriff's people what you wanted to do with regard to remaining silent? [Document refers to the statement of rights.]

A. I told them I wanted a lawyer.

Q. Did you tell them that you didn't want to talk to them?

A. I told them I did not wish to talk to them."

The document was signed at 12:55 p. m. Defendant further testified the deputies continued to question him until about 6:00 p. m.; that he demanded a lawyer two or three dozen times; that one deputy threatened him by saying that they were going to get him this time one way or another. Defendant testified that the threat didn't work because he didn't confess to the offense.

Defendant was twenty-five years old and had a tenth-grade education.

One cannot determine from defendant's testimony when the alleged confession was given, if at all, because he denies making any statements to the deputies.

Officer Boatman testified that he read the statement of rights to defendant and defendant confessed during the first part of the afternoon as opposed to the middle or latter part of the afternoon, and thereafter, until about 6:00 p. m. defendant was questioned about other burglaries; that defendant was not reluctant to talk about the offense; that defendant never said he wanted a lawyer present, but defendant did refuse to give a signed statement. Officer Wester testified defendant wanted to and was permitted to talk to his girl friend, Dianne Ganzer, and after doing so defendant said nobody cared about him and he wanted to tell the deputies all about it; that defendant did confess between 1:00 and 3:00 p. m. that afternoon. Dianne Ganzer had been arrested along with defendant and brought to the sheriff's office. Her mother, Martha Ganzer, testified that Dianne was brought home not too long after arrest and that during that afternoon she, Martha, received a phone call from defendant and he asked her to help him get a lawyer. Martha did not do so because she couldn't afford one. The record is not entirely clear as to whether defendant talked to his girl friend at the sheriff's office or whether he, after being offered the phone to call a lawyer if he wanted to, stated that he wanted to call his girl friend and called her number but spoke to the mother, Martha, or both. It is clear, however, that defendant was permitted to use the phone and that he did call the Ganzer home.

At trial Deputy Gilmore testified he asked defendant if he wanted an attorney and defendant was offered a phone. Defendant called Mrs. Ganzer but the deputy did not hear the conversation. Gilmore was in and out of the interrogation room during the afternoon. Gilmore also stated that even though defendant told them he wanted an attorney the deputies kept on trying to talk to him. This testimony appears to be related to Gilmore's testimony that defendant wanted to use the phone to call an attorney, which he was permitted to do, but instead defendant called the Ganzer home, and not to the events transpiring after defendant called the Ganzer home. After defendant called the Ganzer home, he made no further requests of Gilmore.

Deputy Wester testified that he offered defendant the right to call an attorney and to have an attorney with him, but defendant wanted to call his girl friend instead. Deputy Wester testified that defendant stated that he would not give a written statement but would give an oral statement; that defendant was asked if he wanted an attorney before making an oral statement and defendant did not say he wanted one. All deputies denied making any threats.

■ The question before the trial court at the conclusion of the hearing on the motion to suppress and again during the trial on defendant's objection to the testimony of oral confession was whether the alleged statement was voluntarily given and, therefore, admissible in evidence. The question on appeal is whether the evidence was sufficient to sustain the trial court's finding that the statement was voluntarily given. United States v. Entrekin, 450 F.2d 1102, 8th Cir., 1971.

■ When a defendant testifies, as here, that he did state a desire to remain silent and demanded an attorney, the trial court must make a factual determination resolving the issue, and the evidence must be sufficient to support the finding adverse to the accused in order for the confession to be admissible in evidence. The credibility of the witnesses is for the trial court to determine. Defendant clearly and accurately understood the warnings that were given and admittedly knew he could remain silent and have an attorney present. The evi-

dence is sufficient to support the trial court's finding of voluntariness.

█ The trial court's findings here were not made on a silent record, but rather only after evidence was adduced concerning the issue. We hold that the trial court did not err in overruling defendant's motion to suppress nor in overruling defendant's objection during trial to the testimony concerning the oral confession.

█ Defendant contends that his testimony that he was interrogated for about five hours and that he was threatened requires the court to hold that he did not voluntarily waive his privilege not to speak. In support of this contention defendant refers to a statement in Miranda, 86 S.Ct. loc. cit. 1629 [55–57], that whatever the testimony of the authorities as to waiver by an accused, the fact of lengthy interrogations or incommunicado incarceration before a statement is made is strong evidence that the accused did not waive his rights, and that any evidence that the accused was threatened, tricked, or cajoled into a waiver will show that he did not voluntarily waive his rights.

However, the evidence was that defendant gave his statement within an hour and a half or two hours after arrest. This would not necessarily be "lengthy interrogation". Defendant was not held incommunicado. He was offered the phone and used it to call whomever he pleased. The defendant himself testified that the alleged threat didn't work and that he made no statement whatever.

Furthermore, we do not understand Miranda to mean that the trial court is ousted as a fact finder on the question of whether an accused waived his rights whenever the accused testifies that he was threatened. To the contrary, we understand Jackson v. Denno, supra, and Miranda v. Arizona, supra, to require that the court determine this issue on evidence adduced at the hearing. This is what the trial court did here. The point is overruled.

█ Defendant next claims the court erred in giving instruction 9 to the jury on the ground that it failed to require that the state prove beyond a reasonable doubt that defendant waived his right to remain silent before the jury could consider the oral confession.

Nowhere in defendant's brief is the instruction complained of set forth as is required by S.Ct.Rule 83.05. This omission seems to be occurring all too frequently and we take this opportunity to caution that the rules are to be complied with.

Defendant supports his contention by stating that he testified, *during the motion to suppress*, that he told the deputies he did not want to talk to them. He did so testify; however, this testimony was not before the jury as defendant offered no evidence during trial and, consequently, the evidentiary basis upon which defendant premises this point did not exist. Also instruction 9 required, among others, a finding by the jury as a prerequisite to consideration of the oral confession that defendant had been informed of his right to remain silent and further required the jury to find that the confession met all the requirements set out in instruction 8. Instruction 8 required a finding, among others, that the statement was freely and voluntarily made and, in determining that question, the jury was instructed that it must consider all of the attendant circumstances at the time the statement was given. The instructions were broader and more beneficial to defendant than that which is presently required in Missouri. Jones v. State, Mo., 445 S.W.2d 311, 314.

The judgment is affirmed.

HOLMAN, P. J., concurs.

SEILER, J., dubitante.