**STATE of Missouri, Plaintiff-Respondent,**

v.

**Mary Lou ROCHA, Defendant-Appellant.**

**No. 36051.**

Missouri Court of Appeals,
St. Louis District,
Division One.

June 3, 1975.

Motion for Rehearing or Transfer
Denied Aug. 7, 1975.

Application to Transfer Denied
Oct. 13, 1975.

Kent E. Karohl, Thomas P. Howe, David M. Korum, Kirkwood, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Clarence Thomas, Asst. Atty. Gen., Brendan Ryan, Circuit Atty., Arthur Friedman, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

WEIER, Presiding Judge.

Defendant Mary Lou Rocha was convicted of first degree murder (§ 559.010, RSMo 1969, V.A.M.S.) for the murder of her husband and sentenced to life imprisonment. Defendant has appealed her conviction.

Evidence revealed the following: On the morning of May 23, 1973 Juan Rocha, defendant's husband, was found dead on the front porch of his home in the City of St. Louis. A pool of dried blood was found beneath the body. An autopsy revealed that death was caused by a shotgun wound to the lung and pulmonary artery. No. 6 shot were removed from the body.

The defendant was questioned by police within a week of her husband's death. At police headquarters defendant made a video-tape statement which was introduced as evidence at trial. This statement revealed that defendant had wanted her husband

killed for some time. Family quarrels, difficulties, and mistreatment constituted the main reasons for this wish. Some six months before the murder, defendant approached her son-in-law, George Waller, and asked him to kill her husband. Waller refused because he did not want his family to find out that he had murdered his father-in-law. But defendant persisted in these requests and Waller then told defendant that although he would not kill her husband, he knew someone who would.

Defendant met this person, Willie Earl Little, at Waller's home on May 19, 1973. Little agreed at this time to kill Juan Rocha for $250.00 or $300.00 She told him she could not pay him all at once because she did not have that kind of money. But she did want him killed and left the manner in which he was to be killed up to Little.

Later that same day defendant met Waller and Little. Defendant was told by Little it would cost her $45.00 to obtain the "thing" that he needed to kill Rocha. She paid him the $45.00 within an hour thereafter.

Defendant, her daughter, Waller and Little attended a carnival on May 22, the night before Rocha's body was discovered. Defendant came home at about 11:00 p. m. after the carnival. She then received a call from Little a short while later in which he told her " 'It will happen * * * shortly' ". Defendant then went to bed. The next morning about 6:30 a. m. she discovered her husband's body on the front porch. He had been shot with a shotgun in the chest.

Defendant raises a number of issues on appeal. Since several of these question the sufficiency of the evidence, we will consider them together. Defendant argues that the trial court erred by failing to sustain her motions for judgment of acquittal made at the close of the state's case and at the close of all the evidence because the state failed to make a submissible case. Defendant further urges that the trial court erred by submitting two instructions to the jury because the evidence failed to support their submission.

In order to determine whether a submissible case was made, we consider the evidence in the light most favorable to the state. All inferences reasonably to be drawn from the evidence must be considered in this same light, and any inferences to the contrary must be disregarded. *State v. Stubenrauch*, 503 S.W.2d 136, 138[6] (Mo.App.1973). Defendant specifically argues that insufficient circumstantial evidence was adduced to make a submissible case against her and to support her conviction. Where the state relies on circumstantial evidence alone, the law is well-settled that the circumstances, to warrant a conviction, must be consistent with each other, must tend to prove guilt, and not only must be consistent with the hypothesis of defendant's guilt but must be inconsistent with every other reasonable hypothesis, including that of innocence. *State v. Irby*, 423 S.W.2d 800, 802[2] (Mo.1968). But this rule is applicable only where the evidence of defendant's agency in connection with the crime is entirely circumstantial. *State v. McClure*, 504 S.W.2d 664, 667[1] (Mo.App. 1974). Admissions by the accused are direct evidence of his guilt. *State v. Stevens*, 467 S.W.2d 10, 25[24] (Mo.1971); *State v. Little*, 501 S.W.2d 562, 563[4] (Mo.App.1973). By reason of defendant's video-taped admissions, this is not a case based upon circumstantial evidence alone.

In order to sustain her contention that the state failed to make a submissible case, defendant enumerates many facts which the state failed to prove. Among these, defendant argues that no evidence was presented to show that Juan Rocha was alive at any time on May 23, 1973, that no evidence showed the time of his death, or the place of the assault on him. Further, defendant urges that there was no showing that George Waller or Willie Little or defendant ever purchased a shotgun or other weapon, or that any of them assaulted Juan Rocha, as charged in the indictment.

We agree with defendant that direct evidence on these facts was not introduced at trial. However, we must determine on this appeal whether the evidence which was presented and the logical inferences therefrom were sufficient to make a case for the jury. The particular facts and circumstances of each individual case must be considered when the sufficiency of the evidence is challenged. Here, defendant wanted her husband dead. She asked George Waller to kill him. She hired Willie Little to do so. She paid $45.00 to be used to purchase an instrumentality or weapon. Willie Little told defendant on the night of May 22, 1973 that it would happen shortly. The following morning Juan Rocha was found dead from a shotgun wound. In substance, defendant, wishing her husband's death, put into operation a scheme to achieve this end, and Juan Rocha was found murdered shortly after defendant's plan was conceived and the chain of events initiated.

■ We find on this record sufficient direct and circumstantial evidence to make a submissible case. An inference could be drawn by the jury that defendant's husband was killed according to plan. The facts introduced thus produce an unbroken chain of direct and circumstantial evidence. Although no evidence was introduced as to the time of Rocha's death, the jury properly could infer that Rocha was killed sometime before 6:30 a. m. on May 23, 1973, since he was found dead in a pool of blood at that time, and Little had called defendant sometime after 11:00 p. m. the night of May 22. While there was no direct evidence as to who carried out the assault on Rocha, a jury could likewise infer that Little carried out his promise to kill Rocha after making the phone call to defendant. For an analogous case in which a murder scheme was conceived, was intended to be implemented in a certain manner, and in which the intended victim died according to plan, but in which there was no evidence that the fatal poison had actually been administered by a co-conspirator, see *State v. Deyo,* 358 S.W.2d 816

(Mo.1962). In a case like this before us, the evidence presented does not have to exclude every possible hypothesis other than guilt. A trial judge does not have to sustain a motion for judgment of acquittal whenever in his opinion the evidence has not ruled out all hypotheses but guilt; such court action would invade the province of the jury. Therefore, mere existence of other possible hypotheses is not sufficient to remove a case from a jury's consideration. *State v. Thomas,* 452 S.W.2d 160, 162[3] (Mo.1970). Contrary to defendant's arguments, we do not find that the jury had to resort to speculation, conjecture, or surmise to reach its verdict. Thus, the trial court did not err by denying defendant's motion for judgment of acquittal, nor by submitting the two instructions, one on circumstantial evidence and the other directing the verdict because of the insufficiency of the evidence.

■ Defendant further contends that the court erred by denying her motion for judgment of acquittal because the state did not prove that the alleged crime occurred within the trial court's jurisdiction; i. e., the City of St. Louis. Defendant thereby concludes that she did not have the benefit of proper venue in her trial. She claims that her right to proper venue guaranteed by Article I, § 18(a) of the Missouri Constitution and § 541.033, RSMo 1969, V.A.M.S., was violated. This contention is related to those in which defendant urged insufficient evidence to support her conviction or to make a submissible case. What we hold in regard to those issues is equally applicable here. In a criminal case venue may be established if the jury reasonably could find from the facts and circumstances introduced into evidence that the crime with which a defendant has been charged occurred within the trial court's jurisdiction. *State v. Bradford,* 462 S.W.2d 664, 671[6] (Mo.1971). From the evidence adduced in the case before us, we find that the jury properly could infer that defendant's husband was assaulted in the City of St. Louis. Rocha's body was found in a pool of dried

blood on the front porch of his home at 2211 St. Louis Avenue, St. Louis, Missouri. When the body was found, it was cold and the police officers at the scene could detect no pulse. There were no facts present to indicate that Rocha had been shot elsewhere and taken to his home; neither was there any indication that he had managed to transport himself to his home after being shot elsewhere. Defendant, however, argues that the above mentioned facts are possibilities and the state did not prove that such circumstances had not occurred. While these are possibilities since there was no direct evidence to dismiss them completely, we conclude from the evidence presented that a proper inference could be drawn that Rocha was assaulted in front of his home. Venue does not have to be proven beyond a reasonable doubt. *State v. Bradford, supra* at 671[6]. The trial court did not err by failing to sustain defendant's motions for judgment of acquittal because the state did not prove the assault had occurred within the trial court's jurisdiction.

■ Defendant next contends that the court erred by failing to grant a new trial because a statement (oral and then transcribed) made by defendant was not produced pursuant to a pre-trial order. This statement had been taken and then apparently destroyed after the video-tape statement was made. Since no motion for a mistrial was made when the situation involving the challenged statement arose at trial, this point may be reviewed only under the "plain error" doctrine. Rule 27.20(c), V.A.M.R. This rule mandates that the error be such that a manifest injustice has resulted or a miscarriage of justice has occurred. From our review of the record we do not find these elements present.

Defendant submits in another point that the trial court erred by failing to grant her motions for a mistrial and for a new trial because the court improperly permitted testimony that Willie Little and George Waller had been arrested. Defendant claims the admission of this testimony was prejudicial, immaterial, and hearsay, since there was no evidence that either Little or Waller committed any criminal act involving her.

Defendant relies on *State v. Chernick*, 278 S.W.2d 741 (Mo.1955) to sustain her contention. The *Chernick* case involved a factual setting wherein the assistant circuit attorney was permitted to testify that he had ordered defendant's arrest after obtaining information from a hospitalized third party. On appeal, this testimony was declared hearsay, and a new trial was ordered. *See State v. Chernick, supra* at 747[4].

■ This case is distinguishable from the *Chernick* situation. In situations involving accomplices or co-conspirators to a crime, the general principle is that the arrest of other accomplices or conspirators and the circumstances surrounding such arrests are admissible evidence against another accomplice or co-conspirator. *State v. Shields*, 391 S.W.2d 909, 912[1] (Mo.1965); *State v. Johnson*, 286 S.W.2d 787, 792[9] (Mo.1956).

■ As her final contention, defendant challenges the submission of Instruction No. 3 to the jury. She argues that this instruction was submitted erroneously because it authorized a finding of guilty if Juan Rocha died on May 23, 1973, which date was prior to that charged in the indictment, May 27, 1973. Admittedly there is a variance here between the indictment and the instruction as to the date of Rocha's death. However, defendant was aware that her husband was dead on May 23 because she had discovered his body. Thus, she could not have been misled as to the crime with which she was charged by the indictment. Further, all evidence introduced at trial established that Juan Rocha was dead on May 23, 1973. Minor variations between an indictment and proof, such as clerical errors as to time or place, are not fatal errors requiring a new trial unless time is of the essence of the offense. *State v. Payne*, 452 S.W.2d 805, 809[12] (Mo.1970). We find no prejudice to defend-

ant under these facts, and defendant's allegations to the contrary are without merit.

The judgment is affirmed.

DOWD and RENDLEN, JJ., concur.